UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LAFEY,

   Petitioner,

v.

SHERMAN CAMPBELL,

   Respondent.

Case No. 25-cv-10850
Hon. Matthew F. Leitman

_____/

**<u>ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1); (2) DENYING A CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

Petitioner Andrew Lafey, a prisoner at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a *pro se* petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  In his petition, Lafey raises two challenges to his Michigan state-court convictions for first-degree murder, torture, being a felon in possession of a firearm, three counts of possession of a firearm in the commission of a felony, and being a fourth-felony habitual offender.  He claims that his waiver of his right to a jury trial was constitutionally invalid and that the trial court improperly admitted an incriminating statement he made before he was advised of his *Miranda* rights.

1

The Court has carefully reviewed Lafey's claims and concludes that Lafey is not entitled to habeas relief.   Therefore, for the reasons explained below, the Court **DENIES** Lafey's petition (ECF No. 1) and **DENIES** Lafey a Certificate of Appealability.  However, the Court **GRANTS** Lafey leave to proceed *in forma pauperis* on appeal.

## I

### A

Lafey was convicted and sentenced in 2022 following a non-jury trial in the Barry County Circuit Court.  The Michigan Court of Appeals described the relevant facts of his convictions as follows:[1]

> This appeal stems from the torture and murder of [Lafey]'s girlfriend, G.B. In the weeks leading up to G.B.'s death, [Lafey] told several witnesses that he would kill her because she gave him a sexually transmitted disease. Likewise, on the day of her murder, [Lafey] again stated that he would kill her. That day, witnesses saw [Lafey] leave his house with G.B. He was carrying a .22 caliber rifle. When [Lafey] returned later that evening, he was alone. He proceeded to show his roommates a video that he filmed of himself stomping on G.B. and berating her. The video was approximately 12 minutes long and showed [Lafey] violently stomping on G.B. approximately 50 times. That same night, [Lafey] called his father, Joseph Ketola, telling him that he killed someone by shooting her twice and that he needed help hiding the body. The day after the murder, the owner of [Lafey]'s house and one of the witnesses to whom [Lafey] showed the video, Charles James, went to [Lafey]'s

---

[1] On habeas review, factual determinations made by the State court are presumed to be correct. *See* 28 U.S.C. 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

father, Ketola, and discussed the murder. Together, Ketola and James went to the police to report the murder the next day.

After receiving the tip from Ketola and James, Nashville Police Chief Christopher Sean Underhile and Barry County Sheriff's Department Sergeant Richard Frazer and Deputy Kevin Erb went to James's house to question [Lafey]. Chief Underhile wore a body camera during this interaction. During their questioning of [Lafey], [Lafey] handed his phone to Deputy Erb, who found a picture of G.B.'s body in the camera gallery. After detaining [Lafey], Sergeant Frazer performed a pat-down search of him. During that pat-down, [Lafey] motioned to his pocket and stated, "In the small pocket are the shells I shot her with." These shell casings were forensically linked to a .22 caliber rifle found at James's house. The same day, the officers found G.B.'s body buried in the snow on James's property.

After [Lafey] was arrested, he participated in an interview in which he stated that he made the video of himself stomping on G.B. Further, after [Lafey] was incarcerated, he made the statement, "I will kill you bitches just like I killed the other bitch" to a corrections officer during a move from a lower security cell to a higher security cell.

Before trial, [Lafey] moved to suppress the statements that he made and which were recorded on Chief Underhile's body camera video which he spoke before he was advised of his Miranda rights. The trial court suppressed most of the statements on the video leading up to the provision of [Lafey]'s Miranda rights, except for the statement regarding the shell casings. In allowing this statement, the trial court reasoned that the statement was made spontaneously and not in response to any interrogation.

*People v. Lafey*, --- N.W.3d ---, 2024 WL 4338511, at * 1–2 (Mich. Ct. App. Sept. 27, 2024), *lv. den.*, 16 N.W.3d 728 (Mich. 2025).

3

Lafey waived his right to a jury trial. *See id.* at *1.  Following a bench trial, the trial court convicted Lafey of first-degree murder, Mich. Comp. Laws § 750.316, torture, Mich. Comp. Laws § 750.85, being a felon in possession, Mich. Comp. Laws § 750.224f, three counts of carrying or possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, and being a fourth habitual offender, Mich. Comp. Laws § 769.12. *See id.*  The trial court sentenced him to life without parole for the first-degree murder conviction, 25 to 80 years' imprisonment for the torture and felon-in-possession convictions, and two-year terms of imprisonment for each felony-firearm conviction. *See id.*

**B**

Lafey appealed his convictions and sentences to the Michigan Court of Appeals. *See id.*  The Court of Appeals affirmed, *see id.* at *11, and the Michigan Supreme Court denied him leave to appeal the Court of Appeals' decision. *See People v. Lafey*, 16 N.W.3d 728, 728–29 (Mich. 2025) (mem.).

On March 26, 2025, Lafey filed the instant petition for a writ of habeas corpus in this Court.   He raises two challenges to his convictions as follows:

> 1. The trial court deprived Mr. Lafey of his right to a trial by jury when it failed to advise him of this constitutional right prior to accepting Mr. Lafey's waiver.
>
> 2. The tr[ia]l court improperly admitted Mr. Lafey's statement, "Those are the ones I shot her with[,"] even though this statement was made during a period in which Mr. Lafey was su[b]ject to custodial[] interrogation and had not [y]et been advised of his *Miranda* rights.

4

(Pet., ECF No. 1, PageID.3.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

### A

The Court first turns to Lafey's claim that he is entitled to habeas relief because his jury trial waiver was invalid.[2]   The Michigan Court of Appeals rejected this claim on the merits.  The Court concludes that Lafey is not entitled to habeas relief on this

---

[2] Respondent Sherman Campbell (the Warden of Gus Harrison Correctional Facility) argues that this claim is procedurally defaulted because Lafey did not object to the validity of the jury trial waiver in the trial court. (*See* Resp., ECF No. 7, PageID. 115-119.)  Because the Court concludes that Lafey's jury waiver claim is meritless, it does not reach the question of whether the claim is procedurally defaulted. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits").

claim because he has failed to show that the Michigan Court of Appeals' ruling (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**1**

The Court begins with the background rules concerning a waiver of the right to a jury trial as set forth by the Sixth Circuit in other habeas cases governed by AEDPA.

"Because the right to a jury trial is fundamental, a waiver of that right must be voluntary, knowing, and intelligent." *Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011). The burden of demonstrating that a waiver of a jury trial was invalid lies with the defendant who waived it. *See Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004). "[A]lthough recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2002). *See also Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002) ("Neither such an oral colloquy, nor any other particular form of waiver, is required for a valid waiver as a matter of federal constitutional law.") Moreover, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective." *Spytma*, 313 F.3d at 370 (internal quotation omitted). Most importantly, "there is a knowing and intelligent waiver where the defendant 'understood that the choice confronting him was, on the one hand, to be

6

judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *Sowell*, 372 F.3d at 836 (quoting *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990)).   While knowledge of key elements of the right to a jury trial – such as awareness that a jury is composed of twelve community members, that their verdict must be unanimous, and that waiver of jury trial means a judge alone decides guilt or innocence – is *sufficient* for a valid jury trial waiver, it is "not constitutionally required." *Id.* at 832.  The Sixth Circuit has "never required that defendants perfectly understand every element of the jury-trial right in order to properly waive it." *Hartman v. Yost*, 146 F.4th 463, 479 (6th Cir. 2025).

**2**

Here, the Michigan Court of Appeals did not unreasonably conclude that Lafey's choice to waive his right to a jury trial was voluntary, knowing, and intelligent.  More than one year prior to the trial date, Lafey's counsel demanded a jury trial. (*See* Jury Demand dated 02/19/2021, ECF No. 8-2, PageID.172.)  Then, on the first day of trial, a jury panel was summoned and the judge, prosecutor, defense counsel, and Lafey began to pick a jury. (*See* Trial Tr., ECF No. 8-9, PageID.545-589.)  During a break in the proceedings, Lafey's counsel informed the judge that Lafey had a change of mind and wanted to proceed with a non-jury or bench trial. (*See id.*, PageID.588-589.)

The Michigan Court of Appeals recounted what happened next:

> Before granting [Lafey]'s waiver of a jury trial, the trial
> court engaged in a colloquy with [him]:

7

*The Court*: [Defendant], it's my understanding that you would like to do a Bench Trial where I will be the finder instead of a jury; is that correct?

*The Defendant*: Yes, your Honor.

*The Court*: And you have discussed this—you have two very good attorneys by the way, and you've discussed this with them?

*The Defendant*: Yes, your Honor.

\* \* \*

*The Court*: You've discussed this with your attorneys?

*The Defendant*: Yes, sir.

*The Court*: You don't feel like you're being pressured or anything like that—

*The Defendant*: No.

*The Court*: —to make this decision.

*The Defendant*: I'm the one who brought it up.

*The Court*: Okay. Okay. [Defense attorneys], any questions you [sic] like to ask [defendant]?

Afterward, both defense attorneys questioned defendant regarding this decision. First, Attorney James Kinney questioned defendant:

*Mr. Kinney*: [Defendant], you have in front of you a copy of the amended Information that I've given you, correct?

*The Defendant*: Yes.

8

*Mr. Kinney*: And these detail the charges against you, correct?

*The Defendant*: Yeah.

*Mr. Kinney*: Okay. In addition to which this waiver of a jury has to be in open court, and it is in open court because your mother is right behind you, correct?

*The Defendant*: Yes.

\* \* \*

*Mr. Kinney*: And you're the one who brought this up, that you wanted the Judge to make the decision as to acquittal or guilt, correct?

*The Defendant*: Yes, your Honor. Or yes—

\* \* \*

*Mr. Kinney*: ... Anyway, you are voluntarily waiving your right to a Jury Trial?

*The Defendant*: Yes.

*Mr. Kinney*: And you and [both defense attorneys] discussed both the advantages of a Jury Trial and the advantages or disadvantages of both, also of a Bench Trial, correct?

*The Defendant*: Yes.

*Mr. Kinney*: Can you explain your reasons as to why you want a Bench Trial instead of a Jury?

*The Defendant*: Well, I feel it's better because I don't feel I can handle goin' through the whole jury thing, and I feel that it'll—the Jury, soon as they see the video they're gonna find me guilty either way, so—

9

and I feel like it's not just gonna be easier for me but it'll be easier for the court so.

After [Lafey] affirmed that he was not under the influence of alcohol or any mind-altering substances, [Lafey]'s second attorney, Jackie Baker, asked [him] several questions regarding his waiver of his right to a jury trial:

*Ms. Baker*: Do you think you've had enough time with [us] to discuss this before you made this decision?

*The Defendant*: Yeah.

*Ms. Baker*: And this decision came up because you had passed a note along to—to Jim; is that right on that?

*The Defendant*: Yup.

*Ms. Baker*: And you're confident that you understand the benefits and the deterrents to both the Jury Trial and a Bench Trial?

*The Defendant*: Yup.

*Ms. Baker*: And you know that this process—I know right before we went on the record you had a question about this process—that alls you're doing at this point is waiving the Jury Trial, that after this time when we're in this room, we're gonna go into the bigger courtroom you just left from, and Judge Schipper will be making the decisions; you understand that?

*The Defendant*: Yup.

*Ms. Baker*: And that's what you'd like to happen?

*The Defendant*: Yes.

10

> After [Lafey]'s attorneys concluded their questioning, the trial court granted [Lafey]'s request for a bench trial. The trial court noted that after speaking with [Lafey] for several minutes, it could see that [Lafey] was comfortable with his decision, [Lafey] was not stressed or pressured to make the decision, and that [Lafey] clearly made the decision. The trial court further noted that [Lafey]'s decision was "thoughtful on his part ...."

*Lafey*, --- N.W.3d ---, 2024 WL 4338511, at *2–3.

The Michigan Court of Appeals reasonably concluded that under these circumstances, Lafey voluntarily, knowingly, and intelligently waived his right to a jury trial.[3] *See id.* at *5–6. Lafey and his counsel had requested a jury trial and were already in the process of selecting a jury when Lafey decided he wished to proceed with a jury trial. Lafey said "Yes" when Attorney Kinney asked him if he was "voluntarily waiving his *right* to a jury trial." (Emphasis added). Lafey was therefore aware that he had a right to a jury trial. Lafey also confirmed on the record that he had discussed the benefits of a jury trial versus a bench trial with his counsel. He indicated that it was his decision to proceed with a bench trial. He was also advised that if he elected to go with a bench trial, it would be the judge who decided his guilt or innocence rather than a jury. The record in Lafey's case "does not disclose any evidence that [he] was so unaware of the rudimentary elements of trial by jury that his waiver cannot stand."

---

[3] In his petition, Lafey argues that the process by which the trial court approved his jury trial waiver violated Michigan state law. (*See* Pet., ECF No. 1, PageID.17-19.) But habeas relief is not available under Section 2254 for violations of state law.

11

*Spytma*, 313 F.3d at 371.  Lafey is therefore not entitled to habeas relief on his first claim.

**B**

Lafey next contends that the trial court erred when it admitted an incriminating statement he made to police before he was advised of his *Miranda* rights, namely, his statement that the shell casings in his possession were the ones "I shot her with."

This claim was rejected by the Michigan Court of Appeals in part because it found that Lafey was not being interrogated by police officers when he made the statement – rather, he made it spontaneously. *Lafey*, --- N.W.3d ---, 2024 WL 4338511, at *7.  The Court of Appeals alternatively concluded that any possible error in admitting the statement was harmless in light of the "overwhelming evidence" of Lafey's guilt. *Id*.  It outlined that evidence as follows:

> The prosecution presented various witnesses who heard [Lafey] state that he would kill G.B. in the weeks leading up to her death, as well as on the day of her death. Further, witnesses placed [Lafey] at James's house with G.B. on the day of her murder. Specifically, witnesses testified that [Lafey] left the house with G.B. carrying a .22 caliber rifle with him. Later, [Lafey] returned home alone and proceeded to show several people a video that he recorded of himself stomping on G.B. and berating her for approximately 12 minutes. In addition to showing several people this video, [Lafey]'s father testified that [Lafey] called him the night of the murder and requested assistance hiding a body and telling him that he killed someone. The day after the murder, [Lafey] was arrested with two .22 shell casings on his person. Likewise, a .22 caliber rifle was seized from the house. The shell casings were forensically linked to the .22 caliber rifle at trial. This evidence placed [Lafey] at the

12

> house the day of the murder. Moreover, the video that [Lafey] bragged about to the witnesses connected [Lafey] to the manner of death.
>
> Beyond this evidence, [Lafey] made additional inculpatory statements to officers after he was arrested. He told one officer that he made a video of himself stomping on G.B. Additionally, after [Lafey] was arrested and incarcerated, he made the statement, "I will kill you bitches just like I killed the other bitch" to a corrections officer during a move from a lower security cell to a higher security cell. As a whole and in context, [Lafey]'s statement regarding the shell casings is inconsequential in comparison to the rest of the evidence presented at trial. Accordingly, any error arising from admission of the shell-casings statement was harmless beyond a reasonable doubt.

*Id.* at *8.

On habeas review of a state court conviction, a federal district court may proceed directly to a harmless error analysis of a habeas petitioner's claims without first reviewing the merits of the claim or claims, "when it is in the interest of judicial economy and brevity to do so." *Dittrich v. Woods*, 602 F.Supp.2d 802, 809 (E.D. Mich. 2009), *aff'd in part and rev'd in part on other grounds*, 419 F. App'x 573 (6th Cir. 2011). The Court will therefore move directly to the issue of harmlessness here because doing so is in the interest of judicial economy.

Where, as here, a state court determines that a constitutional error at trial is harmless, a habeas petitioner is not entitled to federal habeas relief unless he satisfies both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the test that Congress prescribed in AEDPA. *See Brown v. Davenport*, 596 U.S. 118, 122 (2022).

The *Brecht* test for harmless error "ask[s] whether the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (quoting *Brecht*, 507 U.S. at 623).  A "substantial and injurious effect or influence" means "actual prejudice." *Brecht*, 507 U.S. at 637–38.  On the other hand, "AEDPA asks whether every fairminded jurist would agree that an error was prejudicial." *Brown*, 596 U.S. at 135.  "In sum, where AEDPA asks whether every fairminded jurist would agree that an error was prejudicial, *Brecht* asks only whether a federal habeas court itself harbors grave doubt about the petitioner's verdict." *Id.* at 136 (emphasis in original).

Lafey is not entitled to relief on this claim because he has not satisfied either the AEDPA or the *Brecht* tests.  First, he has failed to satisfy *Brecht* because he has not produced in the Court's mind any doubt that the verdict against him would have been the same without the admission of his statement identifying the shot casings.  The evidence against him was overwhelming. That evidence included multiple inculpatory admissions about G.B.'s murder, which Lafey made to several different individuals including his own father.  The shell casings themselves (without the accompanying incriminating statement), the video of Lafey beating G.B., and other circumstantial evidence all tied him to her murder.  Given this substantial body of compelling evidence of guilt, the Court is confident that the verdict would have been the same absent admission of the statement concerning the shell casings.  Any error was therefore harmless under *Brecht*.  For the same reasons, Lafey has failed to show that under

14

AEDPA, every fair-minded jurist would agree that the error here was prejudicial.  On the contrary, for the reasons explained above, reasonable jurists could agree that omitting the contested statement would not have changed the outcome of Lafey's case. Lafey is therefore not entitled to relief on his second claim.

## IV

For the foregoing reasons, the Court **DENIES** Lafey's petition for a writ of habeas corpus.

In order to appeal the Court's decision, Lafey must obtain a certificate of appealability.  To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Lafey a certificate of appealability because jurists of reason would not debate the Court's conclusion that Lafey failed to demonstrate that he is entitled to habeas relief.

However, if Lafey chooses to appeal the Court's decision, the Court **GRANTS** him leave to proceed *in forma pauperis* on appeal because an appeal could be taken good faith. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002)

15

(explaining that the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability).

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 28, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 28, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

16